59 CCPA

**In the Matter of the Application of William G. JAMES and Sherwin P. Malchick.**

**Patent Appeal No. 8748.**

United States Court of Customs and Patent Appeals.

July 13, 1972.

Richard L. Johnston, Chicago, Ill., John S. Roberts, Arlington, Va., John G. Premo, Chicago, attorneys of record, for appellants.

S. Wm. Cochran, Washington, D. C., for Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting C. J., ALMOND, BALDWIN and LANE, Judges, and CLARK, Justice (Ret.), United States Supreme Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the examiner's rejection of claims 1, 3, 4, 6, 7 and 10 of appellants' application [1] under 35 U.S.C. § 103. No claims have been allowed.

1. Serial No. 508,148, filed November 16, 1965.

## The Invention

The invention relates to papermaking. Appellants improve the dry strength of paper by adding a "co-active specie," comprising a hydrocolloid (preferably starch) and an acrolein polymer, to the paper-pulp slurry. Preferably the aqueous solution containing the "co-active specie" also contains aluminum ions. The exact nature of appellants' "co-active specie" is not clear from the record before us, but it is formed by mixing a solution containing the hydrocolloid and the acrolein polymer, at a temperature of from room temperature up to about 60°C, for a period of time ranging from 15 minutes to "3 hours or longer."

Claim 1 is representative:

1. In a process for improving the dry strength of paper wherein a hydrocolloid is added to an aqueous dispersion of paper pulp prior to formation of said pulp into paper; the improvement comprising:

A. adding to an aqueous solution of said hydrocolliod [sic] from 0.-25% to 10% by weight of an acrolein polymer, based on the weight of said hydrocolloid, to form a hydrocolloid-polymer mix;

B. aging said mix for sufficient time to form a co-active specie; and

C. thereafter adding from 0.1% to 4% by weight of said co-active specie to said aqueous dispersion of paper pulp, based on the dry weight of said pulp, under conditions whereby said co-active specie contacted with said pulp forms a treated pulp, which, when formed into paper, possesses improved dry strength.

Claims 3, 4 and 7 all depend on claim 1. Claim 3 recites a 1–5% range of acrolein in the hydrocolloid solution. Claim 4 recites that the acrolein polymer and the hydrocolloid are aged 1 to 2 hours at a temperature range of from room temperature to 60°C. Claim 6 is dealt with below. Claim 7 recites that the acrolein polymer is a homopolymer of acrolein. Claim 10 recites that an aluminum ion source is added to the "co-active specie" and the pH adjusted to 4.0 to 5.0 prior to the addition to the aqueous pulp.

## The References

The references relied on are two patents to Houff et al., which will be referred to as Houff '296[2] and Houff '422.[3]

Houff '296 is directed to the preparation of paper having improved wet strength. The improved wet strength is obtained by adding an aqueous solution of an acrolein polymer to the paper. The acrolein polymer can be added to the paper either in the paper pulp slurry at the beater stage, or in the finished paper, as by dipping the paper into a solution of the acrolein polymer. The specification states:

The water solution used in the treatment of the paper may be basic, neutral or acidic. It is generally preferred to employ acidic solutions, e.g., those having a pH between 1.8 and 5. Particularly superior results are obtained, both in the dipping process and in the beater stage addition process, by first neutralizing the solution containing the water-soluble polymer derivative and then adding a polyvalent metal salt, such as, for example, aluminum sulfate, zinc nitrate and the like. When this technique is used, much higher wet strength retention values are obtained as compared to those obtained by using the usual procedure with the unmodified polymeric solutions.

Emulsifying agents, *water-dispersible binding colloids*, plasticizers, antioxidants, dyes, fillers, etc. may also be included in the aqueous system, but are not essential to obtaining the re-

2. U. S. Patent No. 3,079,296, issued February 26, 1963.

3. U. S. Patent No. 3,321,422, issued May 23, 1967, on an application filed May 11, 1962.

sults set out above. [Emphasis added.]

Numerous examples are presented, using various kinds and various concentrations of acrolein polymers.

Houff '422 relates to a process for converting water soluble materials such as starch, to water resistant materials, which are then used as improved adhesives and water resistant starch sizing compositions. A stated object of the invention is "to provide paper products containing a water resistant starch composition." The improved starch composition is made by combining starch with an acrolein polymer, preferably by "making an aqueous dispersion of the starch in water by stirring and/or heating, and then adding [the] water-soluble derivative of the aldehyde [acrolein] polymer to this aqueous suspension." Regarding the use of the resulting composition, it is stated:

> By reasons [sic] of their water-resistant character, the compositions of the invention are particularly well adapted to inclusion in paper products. The compositions may be included in the paper as a constituent of a water-resistant surface coating or body size, or they may be included as a water-resistant adhesive in such products as laminated fiber board or corrugated fiber board. * * *

The composition is also stated to be storage stable. It is stated in one of the examples that the composition was stable for over a week.

### The Rejection

The examiner rejected the claims under 35 U.S.C. § 103 as unpatentable over Houff '296 in view of Houff '422. He equated the phrase "water-dispersible binding colloid" in Houff '296 with appellants' term "hydrocolloid," and concluded that it would have been obvious to use the polyacrolein starch mixture of Houff '422 instead of the water-soluble colloid combined with acrolein polymer of Houff '296. The examiner considered

the addition of an aluminum salt as recited in claim 10 would have been obvious in view of the above-quoted teachings in Houff '296 regarding aluminum ions.

The board agreed with the examiner. In response to certain of appellants' arguments, it stated:

> While the primary reference is concerned mainly with increasing the wet strength of paper, it clearly discloses a simultaneous improvement in dry strength; note the examples. The secondary reference describes appellants' specific composition as a size for paper, and states in column 15, lines 13 and 14, that the composition was found to be storage-stable for over a week. This storage time meets the "aging" step of appellants' claims. Even if the term "body size" in the 3,321,422 patent is merely synonymous with "surface coating" (as appellants contend), we believe that it would be obvious to workers of ordinary skill in the papermaking art to improve the water-resistance of paper by adding the size composition of 3,321,422 in the beater. The well-known general equivalency of beater addition or dry end addition of size it stated in 3,-079,296, and the use of either method involves nothing unexpected. With respect to claim 10, we see no significant distinction * * * over the use of an aluminum salt in 3,079,296 * * *.

### Opinion

■ We note that although the board sustained the rejection of claim 6, that claim is not in the record before us and is not discussed in appellants' brief. The appeal as to that claim is therefore dismissed.

■ Before us, appellants argue that the examples in Houff '296 would not suggest that dry strength would be in-

creased by addition of an acrolein polymer; that Houff '422 only teaches the use of the composition as a surface coating and not as an additive to be mixed into the pulp at the beating stage; that neither reference teaches appellants' ageing step; and that the addition of the aluminum salt recited in claim 10 renders that claim patentable even if the other claims are not.

We think that the Houff '422 patent fairly suggests the use of the compositions therein disclosed as internal sizing agents, which appellants state in their brief are "added to paper pulp for purposes of increasing the water resistance of the paper." The case is even stronger when the Houff '422 patent is read in conjunction with Houff '296, which clearly suggests the addition of very similar agents to the pulp at the beater stage. As far as the "ageing" step is concerned, we think that the step is suggested by the disclosed storage characteristics of the Houff '422 compositions. Indeed, anyone making up a batch of those compositions would be likely to store it at room temperature for 15 minutes or longer merely as a matter of convenience. As the board pointed out the difference between "ageing" and "storing" in this case is merely one of semantics. With regard to claim 10, one skilled in the art, with both patents before him, would clearly be taught by Houff '296 to use aluminum ions or the like in conjunction with the Houff '422 compositions. Whatever else might be said about the examples in Houff '296, they do not teach *against* the combination of the references, and therefore need not be further considered.

We agree with the board and the examiner that it would have been obvious to substitute the compositions of Houff '422 in the Houff '296 process and thus obtain the processes of the appealed claims. Accordingly, the decision of the board is affirmed.

Affirmed.